UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RAMONA A. ROSALES RODRIGUEZ, | No. CV 12-07190-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| CAROLYN V. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for a Period of Disability and Disability Insurance Benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") adequately

|   |   |
|---|---|
| 1 | considered the record in determining that Plaintiff could return to her past relevant work before the Date Last Insured ("DLI") (JS at 3); and |
| 4 | 2.   Whether the ALJ properly considered Plaintiff's daughter's statements (JS at 19); |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed, and the matter remanded for a new hearing consistent with this Opinion.

## **BACKGROUND**

For almost fourteen years, Plaintiff worked as a packer at a styrofoam cup manufacturer. (AR 31, 131). In November 1999, she sustained an injury to her back while on the job and began feeling low back pain. (AR 441). She received physical therapy and continued working, initially on modified light duty for two months before resuming her regular responsibilities. (AR 433-442, 1126). About one year later, on December 22, 2000, Plaintiff began experiencing low back pain again while at work. (AR 371). Her pain reached a point where she was unable to operate the manufacturing machinery. (AR 372). She remained off work since that date. (AR 31, 372).

Starting in 2001, Plaintiff underwent an extensive treatment program for her back pain. Between January 3 to April 18, 2001, she received at least six epidural block injections. (AR 400, 401, 449, 560). In spite of this treatment, Plaintiff still complained about back pain, on one occasion in January 2001 describing it as a seven out of ten in terms of severity. (AR 400, 413, 444, 458, 485, 548,

560). A discography was performed on May 31, 2001, and doctors noted a bulging disc at L5-S1 on August 22, 2001. (AR 551, 593). Plaintiff had a herniated disc at L4-S1, and she underwent a discetomy and fusion operation at L5-S1 on August 23, 2001. (AR 399). However, she obtained little relief. Additional epidural blocks were administered through December 2002 in response to persistent pain complaints, and during one doctor's visit in October 2002, Plaintiff rated her pain an eight out of ten. (AR 497, 516, 593, 569, 572, 574, 593, 597, 403).

Plaintiff's treatment continued in late 2003 into February 2004 when she again reported low back pain. (AR 806). Complaints continued in April and August 2004. (AR 684, 681). On August 23, 2004, Plaintiff received additional epidural injections, but her pain persisted. (AR 373). In May 2005, she reported "constant low back pain." (AR 741). A doctor's report dated December 15, 2005 noted deterioration above the fusion area. (AR 665). In July 2006, L3-4 and L4-5 discs showed evidence of desiccation and slight to moderate narrowing. (AR 756). In 2007, a discography confirmed pain in L3-4 and L4-5. (AR 756). On April 15, 2008, Plaintiff had her L3-4 and L4-5 discs decompressed and a posterior lumbar interbody fusion operation with a removal of instrumentation at L5-S1. (AR 756).

The ALJ issued a five page decision in which she found that through the DLI, Plaintiff was capable of performing her past relevant work as a packer. (AR 11-16). Specifically, the ALJ found that Plaintiff's Residual Functional Capacity ("RFC")[1] was that she could lift and/or carry twenty pounds occasionally and ten pounds

---

[1] A RFC is what a claimant can still do despite existing exertional and nonexertional limitations. <u>See</u> 20 C.F.R. § 404.1545(a)(1).

frequently; stand and/or walk four hours in an eight hour workday; and sit six hours in an eight hour workday. She could occasionally make fast movements, twist, turn, bend, stoop, kneel, crouch, crawl, climb stars, work at heights, or perform overhead work bilaterally. (AR 13-14). In so finding, the ALJ summarized Plaintiff's treatment record in four paragraphs and also found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were credible only to the extent they were consistent with the RFC.[2] (AR 14-15). Finally, the ALJ gave "very little probative weight" to a Third Party Function Report form completed by Plaintiff's daughter. (AR 15).

## DISCUSSION

### I

### THE ALJ DID NOT ADEQUATELY CONSIDER THE RECORD WHEN DETERMINING WHETHER PLAINTIFF COULD RETURN TO HER PAST RELEVANT WORK

Plaintiff's first claim is that the ALJ erred in determining that she could return to her past relevant work before March 31, 2006, the DLI. (See JS at 3-10, 16-19.) Essentially, Plaintiff argues that the ALJ did not adequately review the record and gave insufficient weight to Plaintiff's extensive treatment history by finding that she could return to her past work before the DLI.

A federal district court may disturb the ALJ's decision only if it contains legal error or if it is not supported by substantial

---

[2] Although not raised in the JS, the Court observes that the ALJ erred in discounting Plaintiff's credibility without providing any reasons for doing so. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) ("Although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.").

4

evidence.[3] 42 U.S.C. § 405(g). Therefore, the ultimate question is whether the ALJ's decision is supported by substantial evidence. This Court finds that the ALJ's pain analysis did not adequately consider Plaintiff's treatment history and that the ALJ improperly determined Plaintiff's RFC. Neither are supported by substantial evidence.

### A. **The ALJ'S Pain Analysis**.

In discussing Plaintiff's pain and treatment, the ALJ wrote, "[t]he claimant continued to complain of low back pain which radiated into her right leg with slight numbness and intermittent cramping. She got relief with massage, Tylenol, Advil, and rest," citing to an Agreed Medical Examination[4] ("AME") from May 19, 2005.[5] (AR 14). She also discusses a July 2006 MRI that found discectomy and fusion at L5-S1 and degeneration at L3-4, L4-5 but "was otherwise negative."[6] (AR

---

[3] Substantial evidence is defined as "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

[4] In a workers' compensation case, an AME is performed by an Agreed Medical Evaluator, who is "a physician selected by agreement between the claims administrator, or if none the employer, and a represented employee to resolve disputed medical issues." 8 Cal. Code Regs. § 1(e).

[5] As a preliminary matter, the Court questions the probative value of the May 2005 AME that the ALJ references. The date of the evaluation falls toward the end of the period for which Plaintiff claims disability, which is December 22, 2000 to March 31, 2006. Therefore, even if Plaintiff obtained relief through these means in 2005, it is not reasonable to use one medical report to assume she got relief this way for the remainder of the period.

[6] The "otherwise negative" commentary is essentially meaningless because the L5-S1, L3-4, and L4-5 discs are the sources of Plaintiff's pain and where she received treatment. In light of the treatment history, it is not expected that an MRI would reveal
(continued...)

14).

The ALJ erred by concluding that conservative treatment resolved Plaintiff's pain. Such an erroneous conclusion is foreclosed by the record.

First, the record shows that Plaintiff did not always take painkillers. A preoperative note from September 27, 2002 reported that Plaintiff denied taking aspirin (AR 574), and in July 30, 2002, the record indicates that Plaintiff was put on Vioxx with minimal benefit. (AR 593). A medical report from June 18, 2002 explained that Plaintiff "continued with no medications for her back pain" except "Advil once in a while." (AR 599).

Second, the record indicates that conservative treatment methods did not relieve Plaintiff of her pain. For example, in October 2002, Dr. Mirich reported that even "[w]ith the most recent [epidural] block 10 days ago she had no significant improvement in back pain." (AR 572). Another operation report from August 23, 2004 found that Plaintiff failed to respond to conservative measures, like oral medications, physical therapy, and rest. (AR 372).[7] Plaintiff correctly asserts that the ALJ found persuasive one isolated portion of the lengthy treatment record indicating that Plaintiff got relief through conservative treatment methods and that this note was unrepresentative of what Plaintiff actually experienced. (See JS at 7). See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)

---

[6](...continued)
problems elsewhere.

[7]   The Court notes that Plaintiff testified at the hearing that she was taking hydrocodone, a pain killer (see AR 36), but finds this not probative since the hearing took place on June 30, 2010 and the DLI ended March 31, 2006. There is no indication anywhere in the record that Plaintiff took the drug during the period in question.

1  (impermissible for ALJ to develop evidentiary basis by "not fully
2  accounting for the context of materials or all parts of the testimony
3  and reports."). Therefore, the ALJ's finding that Plaintiff obtained
4  relief through conservative treatment is clearly not supported by
5  substantial evidence.
6       In addition to inadequately discussing pain in the decision, the
7  ALJ also gave short shrift to Plaintiff's pain during the hearing.
8       Q:   Did you ever get called on any of the applications?
9       A:   After a year I was called. But at that time I was just
10           about to go into my first surgery and my physical state
11           was not that good - a lot of pain.
12      Q:   So did they offer you the job and you turned it down or
13           did they not offer it?
14 (AR 32).
15      Later, Plaintiff testified that it took her a long time to shower
16 and get dressed because of the pain, and she also expressed
17 experiencing difficulty carrying large purchases of groceries from the
18 store. (AR 35-36). The ALJ followed up to these statements by asking
19 how far and for how long Plaintiff took walks, how long Plaintiff can
20 stand before having to sit, and whether she took any pain medication
21 and if she experienced side effects from it. (AR 35-36). In
22 response, Plaintiff answered that her walks were about ten to fifteen
23 minutes at most, that she has to sit after ten to fifteen minutes of
24 standing, and that she took a painkiller and experienced nausea,
25 vomiting, dizziness, and heavy headaches as side effects. (AR 35-37).
26      The ALJ failed to ask more probative questions about Plaintiff's
27 pain in light of her extensive complaints of pain and having undergone
28

two operations.[8]  The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). Here, the Court cannot find that the ALJ adequately considered Plaintiff's interests during the hearing because the ALJ failed to probe meaningfully into Plaintiff's pain as documented by a history of medical records.

Relatedly, the ALJ erred when analyzing Plaintiff's pain by failing to include any discussion of her treatment history or give *any* reasons for expressly rejecting that history.  Although an ALJ is not required to discuss every piece of evidence in interpreting and developing the record, she is still required to develop the record and interpret medical evidence.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  The ALJ must explain why probative evidence was rejected.  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The Court finds it unnecessary to reiterate Plaintiff's lengthy treatment history, but as documented above, she received a series of epidural shots and one discectomy and fusion operation, and went on a multitude of doctor and physical therapy visits from 2000 to the DLI.[9] Records after the DLI show that Plaintiff still experienced pain and received a second fusion operation in April 2008.  (AR 756).  It is unclear why the ALJ seemingly rejected this history in finding

---

[8] It is immaterial that many of Plaintiff's records come from examinations made by worker's compensation doctors.  The ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding.  See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal 2002).

[9] The Court finds especially noteworthy a physical therapy report from April 2002 showing that Plaintiff made 48 visits to date to see a physical therapist.  (AR 613).

8

1 Plaintiff capable of returning to her past work. The decision fails
2 to cite *any* reasons for discounting this significantly probative
3 evidence. Although the Court cannot substitute its own judgment for
4 that of the ALJ's when evidence can reasonably support affirming or
5 reversing the ALJ's decision (see JS at 16, citing Flaten v. Sec'y of
6 Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)), the
7 ALJ's decision essentially ignores years of pain complaints and
8 treatment.[10]

9 Under a liberal reading of the ALJ's decision, it is possible
10 that her opinion rests on an evaluation from January 27, 2009 by Dr.
11 T. Sophon that found Plaintiff had low back pain but no tenderness or
12 evidence of spasm in her back. (AR 15-14, citing AR 203-08). To that
13 extent, the Court is not convinced this constitutes substantial
14 evidence. The Ninth Circuit has established that consultative
15 examiners' opinions are entitled to less weight than Plaintiff's
16 treating physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
17 1995). More importantly, the Court notes that Dr. Sophon's
18 observation is from a medical evaluation dated January 27, 2009, well
19 after the DLI of March 31, 2006. Therefore, even assuming a lack of
20 tenderness or evidence of spasm is necessarily inconsistent with back
21 pain, Dr. Sophon's observations are not probative of Plaintiff's
22 conditions during the period in question and cannot be substantial
23 evidence used to support the ALJ's decision.
24 //

---

[10] The ALJ summarizes Plaintiff's medical history in four, cursory paragraphs, glossing over Plaintiff's fusion operations, noting Plaintiff's pain in one sentence, and instead highlighting Dr. Sophon's evaluation and the non-examining state agency physicians' findings. (AR 14-15).

**B.  The ALJ'S RFC Determination**.

Next, the Court finds that the ALJ also erred in determining Plaintiff's RFC.  In discussing how she determined Plaintiff's RFC, the ALJ wrote, "[t]he State Agency reviewing physicians concluded that [Plaintiff]'s orthopedic symptoms did not for any 12 month period prior to her date last insured deprive her of the capability to work at the light exertional level.  The undersigned concurs with this assessment and adopts it as the residual functional capacity herein."  (AR 15).  The ALJ cites to state agency Dr. Paxton's May 6, 2009 report in which the state agency physicians reiterated Plaintiff's treatment history and found that there was no consecutive twelve month period where Plaintiff was unable to perform at a light RFC.  (AR 287).  The ALJ erred by relying solely on the non-examining state agency doctors to determine Plaintiff's RFC.

First, the ALJ need not accept opinions of doctors if they are "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.  The report falls under this category as it fails to give any reason for how the non-examining doctors determined Plaintiff's exertional limitations to be light.  The Decision also does not cite to any of her medical history in determining her RFC.

Furthermore, the state agency doctors are a non-examining source, and in the absence of record evidence to support it, an nonexamining physician's opinion alone does not constitute substantial evidence. Lester, 81 F.3d at 831.  Here, there is no evidence that the state agency physicians' opinions are confirmed by independent clinical findings or any other evidence in the record.  Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with

10

independent clinical findings or other evidence in the record.") In fact, the light RFC finding appears to contradict the record. The record clearly demonstrates that Plaintiff experienced extreme and consistent back pain, at the very least, beginning in 2001 and through 2002. As a matter of law, the state agency physicians' finding alone cannot be substantial evidence used to support the ALJ's RFC determination.

## II

**THE ALJ DID NOT PROPERLY CONSIDER PLAINTIFF'S DAUGHTER'S STATEMENTS**

Plaintiff's second claim is that the ALJ erred in giving very little probative weight to a third party function report completed by Plaintiff's daughter, Alisia Sosa, detailing the limitations of Plaintiff's physical impairments. (JS at 19-20, 21).

Sosa indicated that she spends three to four days a week with Plaintiff and helps her around the house. (AR 171). She documented a number of Plaintiff's limitations with respect to her daily activities, including problems washing below her knees, not being able to put on socks or tie her shoes, difficulty sleeping, difficulty cutting her toe nails, trouble taking clothes out of the dryer, difficulty sitting for longer than thirty minutes, among others. (AR 172-76).

The ALJ gave little weight to the report because "[a]lthough the daughter is obviously concerned about the claimant's well-being, she is not a medical professional or otherwise qualified to diagnose severe impairments or to assess their effect on the claimant's ability to perform work-related activities." (AR 15).

The ALJ erred in devaluing Sosa's report on the grounds that she

was not professionally qualified to diagnose severe impairments. Indeed, the Ninth Circuit has held that the ALJ must consider lay testimony when determining whether a claimant is disabled. Bruce v. Astrue, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (holding that claimant's wife, a lay person, though not a vocational or medical expert, was not disqualified from rendering opinion as to how her husband's condition affected his ability to perform basic work activities); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

To the extent that the ALJ devalued Sosa's report because it was completed on April 25, 2009 and therefore not probative of Plaintiff's condition prior to the DLI, (see JS at 20-21) this argument is precluded by the contents of the report. Sosa wrote with respect to Plaintiff and her injury, "Ever sence [sic] she hurt her back, it[']s been surgerys [sic], doctor visits, just being home and nothing but stress." (AR 178) This statement means that Sosa's report is not simply probative of Plaintiff's condition in 2009 but also meant to describe her ongoing physical limitations since the injury took place. Thus, even assuming the ALJ devalued the report because it was completed in 2009, the ALJ erred in giving very little weight to Sosa's report as the report can reasonably be interpreted to describe Plaintiff's ongoing limitations.

In conclusion, this matter must be remanded as to both issues raised by Plaintiff. It is unquestionable that the ALJ failed to adequately discuss Plaintiff's pain when determining whether she could return to her past work before the DLI and erred in relying solely on

the state agency physicians' opinion of Plaintiff's RFC.  It is also apparent to the Court that the ALJ erred in giving almost no weight to the testimony of Plaintiff's daughter.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

DATED: June 17, 2013                    /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE